U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2018 JAN 31 PM 4:53
CLERK
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ESTATE OF EVA C. PUPPOLO, CELESTE PUPPOLO, Executor,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN J. WELCH, JR., J. WELCH, JR., LTD.,<br><br>    Defendants. | Case No. 5:14-cv-95 |

**ORDER ON MOTION FOR RECUSAL AND ON MOTION TO SUPPLEMENT**
**(Docs. 94, 99)**

Plaintiff filed this lawsuit for legal malpractice in May 2014. (Doc. 1.) It is a diversity action. Since filing, it has been assigned to the Hon. Christina Reiss.

Plaintiff has filed a motion under 28 U.S.C. §§ 144 and 455 seeking to disqualify Judge Reiss from sitting on this case. (Doc. 94.) The defendant has filed an opposition (Doc. 96) and Plaintiff has filed a reply (Doc. 98). Judge Reiss has referred the recusal motion to the undersigned judge for decision. (Doc. 97.)

### Facts

Plaintiff Celeste Puppolo is the personal representative of the estate of her late aunt Eva Puppolo. (Aff. of Celeste Puppolo, Doc. 94-8.) Eva Puppolo died in 2003 at the Crescent Manor nursing home in Bennington, Vermont. (*Id.* ¶ 5.) Plaintiff attributes her aunt's death to an overdose of fentanyl applied through a transdermal patch. (*Id.*) Following an autopsy, the Chief Medical Examiner concluded that Eva Puppolo died from heart disease. *See Puppolo v. Donovan & O'Connor, LLC*, 2011 VT 119, ¶ 3, 191 Vt. 535, 35 A.3d 166 (mem.).

In 2006, Plaintiff filed a medical malpractice action against Crescent Manor. She was represented in that case by attorney Christopher Dodig. (*See* Doc. 94-8 ¶ 2.) The case was filed too late and dismissed on statute of limitations grounds. (*See id.* ¶ 3.) In 2008, Plaintiff filed suit against attorney Dodig and his law firm Donovan & O'Connor claiming legal malpractice. She was represented by attorney John J. Welch, Jr. The 2008 case was tried to a defendant's verdict which was upheld on appeal. *See Puppolo*, 2011 VT 119.

In the present action, Plaintiff—now represented by attorney R. Peter Decato—has brought suit against attorney Welch for legal malpractice. She alleges that Mr. Welch was negligent in failing to:

- Conduct sufficient discovery;
- Call two important witnesses to testify at trial;
- Introduce certain evidence at trial;
- Take appropriate measures to rebut or impeach the defense witnesses;
- Employ modern forensic hair analysis to document her aunt's low tolerance for fentanyl;
- Avoid the use of an initial, unsigned version of her expert's affidavit; and
- Object to certain testimony.

(*See* Doc. 1 ¶ 93.) Plaintiff also makes a claim of negligent misrepresentation and two claims of breach of contract. (*Id.* at 16–18.)

In support of her negligence claim, Plaintiff identified attorney Thomas O'Toole as her expert witness. Attorney O'Toole practices in Maryland. He previously represented Plaintiff in a medical malpractice action concerning the death of her mother. (Doc. 42-6.)

Mr. O'Toole provided his expert opinion in stages. In an initial, undated letter, he adopted in conclusory fashion the claims made in the complaint. (Doc. 43-16.) In an opinion letter dated September 15, 2015, Mr. O'Toole supplemented his original disclosure by clarifying that it was his opinion "to a reasonable degree of legal probability that but for such breaches in the standard of care, the Estate would have prevailed at trial on its claims." (Doc. 43-17 at 2.)

The letter contains four footnotes which provide supporting detail for the legal malpractice opinion. Note 1 criticizes Mr. Welch for failing to call Dr. Philip Totonelly as an expert witness. Dr. Totonelly is a New York City cardiologist who had previously reviewed the case. Note 2 criticizes Mr. Welch for failing to use a toxicology text purchased by Plaintiff in the course of the trial. Note 3 criticizes Mr. Welch for failing to follow through on the investigation of possible alteration of medical records. Note 4 criticizes Mr. Welch for failing to prevent attorney Dodig from explaining at trial the reasons why he did not pursue the medical malpractice claim in a timely fashion.

In a third opinion letter dated August 15, 2016, Mr. O'Toole provided a more detailed critique of Mr. Welch's performance. (Doc. 43-12.) Over the course of four pages, he reviewed the black letter law of Vermont relating to legal malpractice and then turned to specific actions taken by Mr. Welch. He criticized Mr. Welch for not developing evidence of misconduct by attorney Dodig which would support a claim for punitive damages. He returned to the issue of the failure to call Dr. Totonelly. He stated that Mr. Welch should have called Brianne DiMaggio and other nurses to testify. On the basis of these shortcomings, Mr. O'Toole concluded that Mr. Welch had caused the estate to lose its case against attorney Dodig.

Defendant Welch filed a motion seeking dismissal, summary judgment or, in the alternative, an order to exclude the testimony of Mr. O'Toole. (Doc. 42.) Plaintiff filed an opposition. (Doc. 43.) Defendant filed a reply. (Doc. 46.)

On April 4, 2017, the court held a *Daubert* hearing concerning the admissibility of attorney O'Toole's testimony. Mr. O'Toole was the only witness. Judge Reiss presided over the hearing. (*See* Hr'g Tr., Doc. 75.)

3

On September 12, 2017, Judge Reiss issued a 34-page decision (Doc. 84) in which she made the following preliminary rulings:

- For purposes of her *Daubert* ruling, she would not admit audio recordings made by Plaintiff of some of her conversations with Mr. Welch and others because there was no showing that Mr. O'Toole relied upon these recordings in reaching his conclusions.

- She would not dismiss the case on grounds that the final O'Toole opinion letter was provided late. Nor would she exclude the final letter from consideration in making her *Daubert* ruling. Instead, she imposed a financial sanction against Plaintiff in the amount of $500 plus certain copying costs.

Turning to the *Daubert* issue itself, Judge Reiss ruled that Mr. O'Toole's opinions were inadmissible under Fed. R. Evid. 702. She identified several reasons for her decision. Mr. O'Toole reached his first two opinions without reviewing Mr. Welch's entire file or his deposition. These opinions "consist of a litany of strategic decisions made by [Welch] without tying those decisions to the applicable law." (Doc. 84 at 24.) Consequently, the trial judge could not determine whether the decisions fell short of prevailing standards of legal practice. The ultimate opinion that Welch lost the case due to his errors was conclusory and did not take into account the full record. Facts such as Dr. Totonelly's prior opinion that Ms. Puppolo died not from the administration of fentanyl but from a different cause altogether were completely overlooked. The judge concluded that there was a significant analytical gap which required exclusion of the expert opinions.

With respect to the opinion expressed in the third letter, the judge found the same defects despite the inclusion of Vermont case law and additional facts. In the court's view, Mr. O'Toole

4

served as a conduit for legal research and conclusions provided to him by lawyers representing Plaintiff. The lack of independent research and thought was an important factor in the exclusion of the expert opinion. In addition, she observed that some of the misconduct alleged by Mr. O'Toole such as dishonesty to the court or the client concerning the attorney's intent to call Dr. Totonelly or his failure to make use of the toxicology text were not in themselves violations of the standard of care. Judge Reiss followed the lead of the Vermont Supreme Court in its decision in the appeal of Ms. Puppolo's medical malpractice case against Crescent Manor in describing these decisions as strategy decisions or, at most, potential ethical violations. (*See* Doc. 84 at 28–29.) Her final basis for the exclusion of the third opinion was her determination that like the prior opinion letters, the letter was a collection of conclusions and statements about the substantive law of legal malpractice which would add little to the jury's understanding of the case.

Having excluded Mr. O'Toole as an expert witness, Judge Reiss granted partial summary judgment on the legal malpractice count. (Doc. 84 at 34.) Motions relating to the other counts are now pending. (*See* Docs. 88, 92.) Forward progress in the case has halted pending resolution of the recusal motion.

### The Recusal Motion

Plaintiff seeks Judge Reiss's recusal on the grounds that "Judge Reiss risks partiality on matters that surround a traumatic death to a vulnerable, elderly person." (Doc. 94 at 2.) According to Plaintiff, a reasonable person would seek to disqualify Judge Reiss on the basis of the 2008 death of her father and her subsequent recusal when she was a Vermont judge presiding over *State v. Madden*, No. 5304-12-07 Cncr. (*Id.* at 2–5.) Plaintiff further asserts that Judge Reiss exhibited "prejudgment and partiality" at the April 4, 2017 *Daubert* hearing. (*Id.* at 8.)

5

Plaintiff filed multiple exhibits in support of her motion, including her own affidavit dated December 18, 2017 (Doc. 94-8) and a December 18, 2017 affidavit by the attorney currently representing her in this case, R. Peter Decato (Doc. 94-3).

Defendants oppose the recusal motion, arguing that (1) it is untimely; (2) it fails to meet the standards applicable to establish recusal; and (3) it is procedurally deficient because it lacks a certificate of merit as required by 28 U.S.C. § 144. (Doc. 96.) In her reply, Plaintiff maintains that the recusal motion is timely and meritorious. (Doc. 98.) Plaintiff has also filed a Motion to Supplement the recusal motion with a certification from attorney Decato that the affidavit he filed in support of the recusal motion was filed in good faith. (Doc. 99.)

**I.     Recusal Standard**

Section 144 of Title 28 provides as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Section 455 of Title 28 provides, in pertinent part, that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), and that such judge shall also disqualify him or herself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* § 455(b)(1).

The court considers § 144 and § 455 together; the substantive analysis is the same under both sections. *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). Section 455(a), however, "provides broader grounds for disqualification than either § 144 or § 455(b)(1)." *Id.* An assertion of personal bias "must be based on 'extrajudicial conduct . . . not conduct which arises in the judicial context.'" *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d Cir. 1994) (ellipsis in original) (quoting *Apple*, 829 F.2d at 333); *see also Gallop v. Cheney*, 645 F.3d 519, 520 (2d Cir. 2011) ("Prior rulings are, ordinarily, not a basis for disqualification.").

Section 455(a) requires recusal where the judge's "impartiality might reasonably be questioned." That provision "sets out an objective standard for recusal, creating the so-called 'appearance of justice' rule." *DeLuca v. Long Island Lighting Co.*, 862 F.2d 427, 428 (2d Cir. 1988). Under that test, the court asks: "Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000) (quoting *Diamondstone v. Macaluso*, 148 F.3d 113, 120–21 (2d Cir. 1998)).

## II. Procedural Challenges to the Recusal Motion

Before reaching the merits of the recusal motion, the court must first consider whether the procedural requirements have been met. *Apple*, 829 F.2d at 333. Defendants argue that the recusal motion is defective because it is untimely and because it lacks the certificate of good faith required by 28 U.S.C. § 144. The court addresses each procedural challenge below.

7

## A. Timeliness

Section 144 contains an explicit "timeliness" requirement, and a timeliness requirement has also been read into § 455. *Apple*, 829 F.2d at 333. "It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Id.* "[T]he actual time elapsed between the events giving rise to the charge of bias or prejudice and the making of the motion is not necessarily dispositive." *Id.* at 333–34. The court must examine several factors, including whether: "(1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; and (4) the movant can demonstrate good cause for delay." *Id.* (citations omitted).

Defendants measure the delay in this case as eight months (the time between the April 4, 2017 *Daubert* hearing and the date the recusal motion was filed on December 19, 2017) or, at minimum, three months (the time between the court's September 12, 2017 decision and the date of the recusal motion). (Doc. 96 at 5.) Indeed, Plaintiff says that "it was apparent" during the April 4, 2017 *Daubert* hearing "that Judge Reiss was both ignoring and skewing expert fact testimony on the true cause of death of Eva Puppolo." (Doc. 94 at 5.) As Plaintiffs put it: "[I]t was evident at the Daubert hearing that Judge Reiss was prejudging." (*Id.*) Defendants assert that this lapse of time makes the recusal motion untimely.

Plaintiff maintains that she did not wait to file her recusal motion but instead "reacted after the time of Defendants' motion for summary judgment, filed on November 15, 2017, when all coalesced for Undersigned counsel." (Doc. 98 at 7.) According to Plaintiff, there were "red flags" prior to the alleged "coalescing" on November 15, 2017. (*See id.*) Specifically, Plaintiff

8

refers to the following remark from the court at a December 16, 2016 motion hearing: "[I]f Mr. O'Toole's opinions are inadmissible, that's the end of the Plaintiff's case. . . . That's a dismissal. That's a body blow to the case. . . . If it's inadmissible, that's one summary judgment case." (Doc. 61 at 20.) According to Plaintiff, the "import" of that remark did not "crystalize" for Plaintiff's counsel until Defendants highlighted it (Doc. 88 at 2 n.2) in their subsequent Motion for Summary Judgment. (Doc. 98 at 5.) Plaintiff says it was at that moment that Plaintiff's counsel began "more extensive research into Judge Reiss's personal history." (Doc. 98 at 5.) Plaintiff asserts that the "last straw" (*id.* at 6) was the court's statement at a November 17, 2017 status conference that "maybe the breach of contract claim [Counts III and IV] is not really the focus of what [Plaintiff]'s trying to establish here anyway." (Doc. 90 at 3.) According to Plaintiff, "[f]or the Court to *project* that Counts II, III and IV are governed by what happens in Count I is a clear illustration of bias." (Doc. 98 at 5.)

The court agrees with Defendants that—in light of the assertions in Plaintiff's recusal motion regarding the "evidence" of impartiality at the *Daubert* hearing—the relevant "event" giving rise to the charge of bias or prejudice was the *Daubert* hearing on April 4, 2017. The court appreciates that Plaintiff's counsel gathered additional facts after that date, but in light of Plaintiff's statement that the alleged impartiality was "apparent" on April 4, 2017, that date controls. The lengthy intervening period of time weighs against timeliness in this case.

The majority of the relevant timeliness factors are in accord. It is true that there have been no substantial proceedings in this case since the *Daubert* hearing. But granting the motion would present at least some danger of wasting judicial resources, given Judge Reiss's extensive work on this case since it was filed in 2014. More importantly, although there has not yet been any trial or judgment in this case, the September 12, 2017 Opinion and Order resolved important

9

issues in the case, and—after filing and withdrawing a notice of appeal in October 2017 (Docs. 85, 86)—Plaintiff filed the recusal motion in December 2017. That constitutes at least some evidence that Plaintiff waited to deploy the recusal motion until after receiving an unfavorable ruling on important issues in the case.

Finally, the only cause for the delay that Plaintiff articulates is that it took time for the "red flags" to "coalesce" and for counsel to gather facts about Judge Reiss's personal history. But given Plaintiff's conviction that evidence of impartiality was present at the April 4, 2017 *Daubert* hearing, this argument fails to justify Plaintiff's delay in filing the recusal motion. The delay alone provides a sufficient basis for denying the motion. It also fails on the merits. *See infra*.

### B. Certificate of Good Faith

Plaintiff's original recusal motion includes several exhibits, including affidavits by attorney Decato (Doc. 94-3) and by Ms. Puppolo (Doc. 94-8). Plaintiff concedes that the affidavit of good faith required by 28 U.S.C. § 144 was not included with that filing. Defendants argue that the omission renders the recusal motion procedurally deficient. (Doc. 96 at 5.)

Unlike section 144, section 455 does not explicitly require the filing of an affidavit or certificate of good faith. The Second Circuit has "not decided whether the filing of an affidavit of bias is required as a procedural prerequisite for § 455." *Apple*, 829 F.2d at 333. If an affidavit (and thus the certificate of good faith) is not required, then this may be a non-issue, especially since Plaintiff's motion is brought under both § 144 and § 455. But since the Second Circuit has directed that procedural requirements be evaluated before the merits of a recusal motion, the court discusses the issue of the omitted certificate here.

10

Plaintiff states that the certificate was omitted inadvertently and unintentionally, but asserts that attorney Decato's December 18, 2017 affidavit was filed in accordance with Fed. R. Civ. P. 11. (Doc. 98 at 9.) Reliance on Rule 11 is not sufficient to satisfy the certificate requirement. It is true that "an attorney's signature on an affidavit is a showing of good faith" under Rule 11, but "§ 144 clearly requires a certificate of good faith." *Lamborn v. Dittmer*, 726 F. Supp. 510, 515 (S.D.N.Y. 1989).

Plaintiff further asserts that, because Judge Reiss ordered the recusal motion transferred to the undersigned, she must have concluded that the December 18, 2017 affidavit was timely and sufficient. (Doc. 98 at 2.) Plaintiff correctly recites the order of events specified in 28 U.S.C. § 144:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

But the statute's final phrases requiring the judge to "proceed no further therein" and that "another judge shall be assigned to hear such proceeding" most naturally refer to events *after* the resolution of the recusal motion. Indeed, the statute does not require a judge who is the subject of a recusal motion to assign the motion to another judge. *See Gottlieb v. S.E.C.*, 310 F. App'x 424, 424 (2d Cir. 2009) (affirming judge's denial of recusal motion directed at her); *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) ("Discretion is confided in the district judge in the first instance to determine whether to disqualify himself."). Nor does a judge's election to transfer a recusal motion to another judge suggest that the transferring judge rendered any decision or finding about the procedural or substantive merits of the motion.

Finally, Plaintiff has attempted to rectify the omission by attaching a certificate of good faith at the conclusion of her reply memorandum (Doc. 98 at 10) and by moving to supplement

11

the motion for recusal with the certificate *nunc pro tunc* (Doc. 99). But even that certificate is deficient. It certifies only that the affidavit filed by *attorney Decato* (Doc. 94-3) was filed in good faith. (*See* Doc. 98 at 10; Doc. 99 at 1.) The relevant affidavit for the purposes of § 144 is the affidavit of the *party*—i.e., Ms. Puppolo's affidavit (Doc. 94-8). *See Macaluso v. Keyspan Energy*, No. CV 05-0823(ADS)(WDW), 2007 WL 1041662, at *14 (E.D.N.Y. Apr. 3, 2007) (section 144 requires a "*party* affidavit"). Indeed, the purpose of the certificate of good faith is to protect against abuse such as a *party's* untruthful affidavit or unjustified attempt to disqualify. *See Morrison v. United States*, 432 F.2d 1227, 1229 (5th Cir. 1970); *United States v. Hanrahan*, 248 F. Supp. 471, 475 (D.D.C. 1965).

In light of this deficiency, the court will deny Plaintiff's Motion to Supplement. The resulting absence of the requisite affidavit is a sufficient basis on which to deny the motion, at least with respect to the portion of the motion resting on § 144. Even without these procedural defects, however, Plaintiff's recusal would still fail for the reasons discussed below.

### III. Legal Sufficiency of Recusal Motion

Here, since Plaintiff has proffered an affidavit, it must be "scrutinized for sufficiency." *Apple*, 829 F.2d at 333. Consistent with her recusal motion, Ms. Puppolo asserts in her affidavit that Judge Reiss should be recused because of the judge's life experiences (namely, the death of a parent), and because of perceived bias at the April 4, 2017 *Daubert* hearing. (*See* Doc. 94-8 ¶¶ 19–20.) For the reasons below, neither category of allegations is sufficient to satisfy the test for personal bias or the appearance-of-justice test.

#### A. Judge's Life Experience and the *Madden* Recusal

Judge Reiss's father was shot and killed in his home in 2008 in a tragic accident caused by a neighbor. At that time, Judge Reiss was a Vermont judge presiding over *State v. Madden*,

No. 5304-12-07 Cncr. Judge Reiss recused herself from the *Madden* case, and later explained her decision to do so:

> This case [*Madden*] involved a defendant who had allegedly shot his best friend while hunting, mistaking him for a coyote. It was a highly publicized case because the defendant was a probation officer who had just come back from military service in Iraq and because hunting cases of this type generally garner state-wide media coverage in Vermont. I was within days of issuing a decision on a motion to suppress and to dismiss, including dismissal for failure to state a claim, when my own father was shot and killed by a neighbor who was shooting at a make-shift target range next to my parents' home. My father's death was highly publicized because he was a well-known professor at a local college and because he was shot while eating dinner in his home. I decided to recuse myself so that the Madden case could be decided without interference and distraction. Although I believed I could decide the case fairly, I was concerned about the appearance of bias. I announced this decision on the record to the litigants.

(Doc. 94-2 at 14–15.)

Defendants do not dispute this account, but maintain that it constitutes "irrelevant and unnecessary family matters" and that the *Madden* case is "an unrelated matter." (Doc. 96 at 1.) Plaintiff maintains that, having recused herself in *Madden* out of concern for the appearance of bias, Judge Reiss should similarly be recused in this case and all "like civil matters." (*See* Doc. 98 at 4.) According to Plaintiff, the 2008 events "are relevant and necessary, as those issues form the basis of Plaintiff's claim of bias." (*Id.*)

Nothing about the 2008 incident or Judge Reiss's recusal in the *Madden* case would support a finding of any "personal bias or prejudice" under § 144 or § 455(b)(1), or a finding of any appearance of injustice under § 455(a). The events at issue and the *Madden* recusal occurred a decade ago. The fact that Judge Reiss recused herself in a prior case does not require that she be recused in this case. *See Person v. Gen. Motors Corp.*, 730 F. Supp. 516, 519 (W.D.N.Y. 1990).

13

It is true that Judge Reiss—like most people—has experienced life in its many aspects include bereavement. But as the Seventh Circuit has cogently observed, judges are presumed to set aside the innumerable possible biasing influences of life experiences:

> [I]n the real world, "possible temptations" to be biased abound. Judges are human; like all humans, their outlooks are shaped by their lives' experiences. It would be unrealistic to suppose that judges do not bring to the bench those experiences and the attendant biases they may create. A person could find something in the background of most judges which in many cases would lead that person to conclude that the judge has a "possible temptation" to be biased. But not all temptations are created equal. We expect—even demand—that judges rise above these potential biasing influences, and in most cases we presume judges do.

*Del Vecchio v. Ill. Dep't of Corr.*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc). Plaintiff has failed to overcome that presumption in this case. The mere fact that Plaintiff and Judge Reiss have both lost parents under difficult circumstances is not grounds for disqualification.

### B. The April 4, 2017 *Daubert* Hearing

As evidence of alleged "psychological smoke" in the courtroom, Plaintiff quotes at considerable length from Judge Reiss's remarks at the April 4, 2017 *Daubert* hearing. (*See* Doc. 94 at 5–15.) She asserts that Judge Reiss "was both ignoring and skewing expert fact testimony on the true cause of death of Eva Puppolo." (*Id.* at 5.)

A judge's opinions or comments during a proceeding can be a basis for recusal if they demonstrate "such a high degree of favoritism or antagonism as to make fair judgment impossible." *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The undersigned's review of the transcript of the April 4, 2017 *Daubert* hearing reveals no such circumstances. No basis for recusal arises from Plaintiff's dissatisfaction with Judge Reiss's remarks about the possible fate of Counts II, III, and IV, or with the September 12, 2017 Opinion and Order following the *Daubert* hearing.

14

## Conclusion

Plaintiff's Motion to Supplement (Doc. 99) is DENIED.

Plaintiff's Motion for Recusal (Doc. 94) is DENIED.

Dated at Rutland, in the District of Vermont, this 3 day of January, 2018.

_____
Geoffrey W. Crawford, Chief Judge
United States District Court